IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DONOVAN CHANNING,

                 Plaintiff,

    v.                                              OPINION and ORDER

THOMAS KLEMKE, RYAN VINEY,                    25-cv-569-jdp
KEVIN DOEBEREINER, and TRAVIS MAZE,

                 Defendants.

---

Plaintiff Donovan Channing brings claims under 42 U.S.C. § 1983 against four law enforcement officers employed by the Jefferson County Sheriff's Department. Channing contends that the officers violated his Fourth Amendment rights by initiating criminal proceedings against him for domestic violence without probable cause.

Defendants move for summary judgment, Dkt. 10, and the court will grant the motion. The undisputed facts establish that there was probable cause to charge Channing with domestic violence offenses, so his Fourth Amendment claims fail as a matter of law. Further, Channing has no evidence that defendants Kevin Doebereiner and Travis Maze were involved in the decision to detain and prosecute him.

UNDISPUTED FACTS

These facts are undisputed except where noted.[1]

---

[1] Channing purports to dispute most of defendants' proposed findings of fact. But his responses are mostly arguments about the meaning of the facts, not genuine disputes about whether the facts are true. Per the court's summary judgment procedures, the court will treat as undisputed facts where Channing did not either identify contradictory evidence or demonstrate that defendants' supporting evidence is inadmissible. *See* Attachment to Dkt. 7, at 4, § II.C.

In 2023, plaintiff Donovan Channing was living in or near Jefferson County, Wisconsin. He was serving a term of extended supervision for a fifth offense of operating while intoxicated. *See* Walworth County case no. 17CF324.

On September 6, 2023, defendant deputy Thomas Klemke met with Morgan Leeder and Amanda Pohle, who had arrived at the sheriff's office to report a crime. *See* Dkts. 13-1–13-3 (transcripts of sheriff's office interview). Leeder told Klemke that she and Channing had previously lived together and that he was not permitted to have contact with her due to a previous incident of domestic violence. But they had recently met up, and Channing had forced Leeder to stay in his house for several days while he beat and choked her repeatedly. Leeder showed Klemke large bruises on her arms and her buttock, which Klemke photographed. Dkt. 13-5. Klemke also spoke with Pohle, who said that she had gone to Channing's residence to find Leeder and observed Channing hitting Leeder in the head and choking her.

In response to Leeder's allegations, the Department of Corrections initiated revocation proceedings, asserting that Channing had violated the terms of his supervised release by having contact with Leeder despite the no-contact order, confining her in his house against her will, and assaulting her. Channing contested the allegations. After a hearing, an Administrative Law Judge concluded that the DOC had not met its burden to prove the assault and unlawful confinement allegations. Dkt. 16-1. The ALJ pointed to inconsistencies between Leeder and Pohle's testimony about the assaults. She also found Leeder's testimony that Channing had confined her against her will not credible, because Leeder had had multiple chances to leave the house and had not done so. And the ALJ noted that Channing had a potential alibi, because he said that he was with his mother and grandmother for a portion of the time at issue. *Id.*

2

Around the same time that the ALJ issued the revocation decision, the Jefferson County District Attorney filed criminal charges against Channing related to Leeder's domestic violence allegations. Dkt. 14-1. A court commissioner signed an arrest warrant, Dkt. 14-3, and Channing turned himself into the sheriff's office shortly thereafter. At a preliminary probable cause hearing, the state called Klemke, who testified about his interview with Leeder and Pohle. Dkt. 41-4, at 5–10. The defense called Channing's grandmother Cheryll Buckingham, who testified that Channing had been with her for an entire day during the time period at issue. *Id.* at 10–14. The defense moved to dismiss the case based on Buckingham's testimony, but the judge denied the motion, concluding that the inconsistencies between Buckingham's and Leeder's accounts would have to be resolved at trial. *Id.* at 15.

In the lead up to trial, defendant detective Ryan Viney was assigned to Channing's case. Viney interviewed Buckingham and Channing's mother Sue Ann Channing about his alibi defense. Both women said that Channing had been with them for portions of the relevant time period. Buckingham also told Viney that Amanda Pohle, the friend who had come with Leeder to the sheriff's office, had recently died.

In May 2024, prosecutors moved to dismiss the charges against Channing, and the court granted the motion. In an affidavit, the prosecutor assigned to the case explained that the dismissal was motivated by evidentiary considerations, including the death of key witness Amanda Pohle. Dkt. 16 (Jeff Shock affidavit), ¶¶ 5–7.

## ANALYSIS

Channing brings claims against each of the defendants for unlawful detention under 42 U.S.C. § 1983 and the Fourth Amendment, contending that they detained him during the

3

pendency of criminal proceedings for which there was no probable cause. *See Thompson v. Clark*, 596 U.S. 36, 42 (2022); *Anderson v. City of Rockford*, 932 F.3d 494, 512 (7th Cir. 2019) (Fourth Amendment guarantees the right not to be held in custody without probable cause). Channing's theory is that defendants failed to adequately investigate Leeder's complaints that he had committed domestic violence and continued to press for his prosecution even after he raised an alibi defense.

Defendants move for summary judgment on Channing's claims. Summary judgment is the "put up or shut up" moment of litigation, at which the non-moving party must demonstrate that he has evidence that requires a trial. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). In response to defendants' motion for summary judgment, Channing must come forward with admissible evidence to support every element on which he bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Defendants raised multiple independent grounds for summary judgment in their opening brief. Dkt. 11. In response, Channing submitted a six-page brief, in which he devoted just one paragraph to each of defendants' grounds for summary judgment, cited no legal authority other than general citations to the summary judgment standard, and failed to identify a single specific piece of evidence supporting his claims. Dkt. 18. Channing's arguments are so undeveloped as to risk forfeiture. *See Irish v. BNSF Ry. Co.*, 674 F.3d 710 (7th Cir. 2012). Nevertheless, the court will address Channing's arguments to the extent that it can discern what he is saying.

The court concludes that summary judgment is warranted here. Although defendants gave multiple reasons for summary judgment, the court will discuss only two. First, the undisputed facts establish that defendants had probable cause for seeking charges against

4

Channing. Second, Channing does not explain how defendants Travis Maze and Kevin Doebereiner were personally involved in these events.

## A.  Probable cause

Probable cause is an absolute bar to a Fourth Amendment claim for unlawful detention. *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). Probable cause is "not a high bar." *Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024). It is established when, based on the information known to the officers, a substantial chance of criminal activity exists. *Id.*

Channing was charged with five criminal offenses related to Leeder's complaints: strangulation and suffocation, Wis. Stat. § 940.235(1), battery, Wis. Stat. § 940.19(1), disorderly conduct, Wis. Stat. § 947.01(1), false imprisonment, Wis. Stat. § 940.30, and criminal damage to property, Wis. Stat. § 943.01(1). Dkt. 14-1 (criminal complaint). In their opening brief, defendants explain in detail why Klemke's interview with Leeder and Pohle established probable cause for each of these offenses. Dkt. 11, at 12–18. Channing doesn't substantively dispute that point in his response brief. Instead, his position appears to be that the officers should have interviewed him before bringing charges, because that would have revealed his alibi defense and defeated probable cause. He also seems to be arguing that the Administrative Law Judge's revocation decision in his favor negated probable cause.

Channing's arguments lack merit. As for the alibi defense, officers can rely on an eyewitness report of criminal behavior to detain a suspect, unless the officer has "reason to believe [that the eyewitness report] is fishy." *Guzell v. Hiller*, 223 F.3d 518, 520 (7th Cir. 2000); *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013). That's true even if the suspect denies the accusation of wrongdoing or another witness provides a different account of the facts. *Williamson*, 714 F.3d at 441. Here, the officers relied on Leeder's report that Channing had

committed domestic violence against her. No reasonable jury could find that Leeder's report would have been "fishy" to a reasonable officer in Klemke's position: Leeder gave Klemke a detailed account of what happened, which was corroborated by both the physical bruising on her body and the account of her friend Pohle. So even if the officers had interviewed Channing and investigated his alibi defense before bringing charges, they would have been under no obligation to believe his version of events over Leeder's. The credibility of competing witnesses is an issue for trial, not for a probable cause determination. *See Askew v. City of Chicago*, 440 F.3d 894, 895–96 (7th Cir. 2006).

As for the revocation decision, Channing cites no authority that prevailing in a revocation proceeding precludes a finding of probable cause for criminal charges based on the same conduct. Nor would such a rule make sense, because the burden of proof for revocation is higher than the probable cause standard. At a revocation hearing, the DOC has to establish by a preponderance of the evidence that a suspect violated the conditions of his supervised release. Wis. Admin. Code § HA 2.05(6)(f). Probable cause on the other hand, requires only a reasonable belief that a suspect committed a crime; it "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 121 (1975)).

There's another reason why the officers' actions were constitutional: before Channing was detained, a court commissioner found probable cause for each of the charges and issued an arrest warrant. Dkt. 14-2 and Dkt. 14-3. Detentions made after a judicial probable cause determination are entitled to a presumption of validity, which can be rebutted upon a showing that (1) an officer intentionally or recklessly made false statements or omitted material facts

6

to the judicial officer; and (2) the false statements or omissions were necessary to the judicial officer's determination of probable cause. *Washington v. City of Chicago*, 98 F.4th 860, 869–74 (7th Cir. 2024); *Moorer v. City of Chicago*, 92 F.4th 715, 720–21 (7th Cir. 2024). Channing does not even attempt to make that showing here.

The undisputed facts establish that there was probable cause to charge Channing. His Fourth Amendment claims fail as a matter of law.

## B. Personal involvement

There is an independent reason to grant summary judgment to defendants Kevin Doebereiner and Travis Maze: Channing has not established that they were personally involved in his detention. To be liable under 42 U.S.C. § 1983, a defendant must have some personal involvement in depriving the plaintiff of his constitutional rights. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Defendants say that Doebereiner is a detective with the sheriff's office and Maze is the county sheriff. But defendants' proposed findings of fact did not mention Doebereiner or Maze, and Channing did not submit any additional proposed findings of fact or explain in his brief how they were involved in violating his rights.

Although he doesn't say it directly, it appears that Channing may have intended to name Sheriff Maze in his official capacity, to bring to a municipal liability claim against the county. *See* Dkt. 18, at 5. That claim fails as well. As the court already explained, Channing has not established that there was any violation of his constitutional rights, which is a necessary predicate for a § 1983 municipal-liability claim. *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015).

ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment, Dkt. 10, is GRANTED.

2.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered August 13, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge